**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KURT VROMAN,**

        **Plaintiff,**

**-vs-**                                                 **Case No. 6:06-cv-229-Orl-28DAB**

**VOLUSIA COUNTY, FLORIDA, JAMES TAUBER, TERRY MOORE, JAMES WILLITS,**

        **Defendants.**

_____

# ORDER

On February 11, 2009, this Court entered an Order (Doc. 199) directing the entry of judgment. That Order and the resulting judgment (Doc. 200) are hereby **VACATED** and this Order is entered in its stead.[1]

This cause is before the Court on Plaintiff Kurt Vroman's ("Vroman") Motion for Equitable Relief and Final Judgment (Doc. 167) and his request for front pay from Defendant Volusia County ("the County"). This Court ruled in its January 5, 2009 Order (Doc. 192) that "Vroman is entitled to front pay after his unconstitutional discharge by the County." (Id. at 6). The parties submitted briefs on the issue, and the Court held an evidentiary hearing on January 29, 2009. The Court now determines the appropriate amount of front pay to award

---

[1] The prior Order (Doc. 199) did not include the $10,000 jury verdict, awarding Vroman $5000 in compensation for net loss of wages and benefits to the date of trial and $5000 damages in compensation for emotional pain and suffering. (See Doc. 163). This Order corrects that oversight.

Vroman.

## I. Background

In February 2006, Vroman brought this action against the County, Chief James Tauber ("Tauber"), Director Terry Moore, and Deputy Director James Willits pursuant to 42 U.S.C. § 1983 alleging that he was terminated from his employment with the Volusia County Fire Department in retaliation for his speech and for his union activity. (Compl., Doc. 1). The case was tried to a jury in March 2008, and the jury returned verdicts on March 19, 2008. The jury determined that Vroman's union activity was the motivation for Tauber's decision to terminate Vroman's employment with the County; however, the jury also found the County, but no individual Defendant, liable for Vroman's legal damages—arguably an inconsistent jury verdict. (Docs. 158-61). In its October 15, 2008 Order (Doc. 183), this Court determined as a matter of law that Tauber was a final policymaker for the County sufficient to establish the County's liability, that the verdicts were reconcilable, and that reinstatement was inappropriate due to the extreme animosity between the parties. The Court reserved ruling on the availability of front pay, ordered the parties to submit memoranda, and held a hearing on the matter. In its January 5, 2009 Order (Doc. 192), the Court held that Vroman was entitled to front pay, ordered the parties to submit memoranda, and scheduled an evidentiary hearing. As earlier noted, that hearing was held on January 29, 2009.

## II. Analysis

As this Court has previously ruled that Vroman is entitled to front pay, the only issue remaining is the amount of front pay to be awarded. The purpose of front pay is to

compensate a victim for the continuing effects of a defendant's unconstitutional actions until the victim can be made whole. Pitre v. W. Elec. Co., 843 F.2d 1262, 1278 (10th Cir. 1988). "A monetary award of front pay is calculated to terminate on the date a victim of a discrimination attains an *opportunity* to move to his 'rightful place.'" Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1529 (11th Cir. 1991) (superseded by statute on other grounds) (discussing front pay in the context of Title VII) (emphasis added). An award of front pay is "intended [neither] to insure a plaintiff's future financial success," McKnight v. General Motors Corp., 973 F.2d 1366, 1371 (7th Cir. 1992), nor to subsidize the plaintiff for the remainder of his working life, see Hipp v. Liberty National Life Insurance. Co., 29 F. Supp. 2d 1314, 1321-22 (M.D. Fla. 1998). A plaintiff seeking front pay bears a duty to mitigate his damages by seeking alternative employment, the income from which will be used to limit the amount recovered. See Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1562 (11th Cir. 1988). The defendant bears the burden of proving that the plaintiff did not make reasonable efforts to mitigate his damages. E.E.O.C. v. Joe's Stone Crab, Inc. 15 F. Supp. 2d 1364, 1378 (S.D. Fla. 1998).

On May 20, 2004, the County unlawfully terminated Vroman from his position as a lieutenant in the Volusia County Fire Services due to his union activities. The City of Deltona Fire Department ("DFD") hired Vroman as a firefighter on November 18, 2005. (Vroman Aff., Ex. 1 to Doc 193, ¶ 15). Vroman then filed suit against the County, Tauber, Moore, and Willits on February 23, 2006. (Compl.). After a six-day jury trial, the jury returned its verdict against the County on March 19, 2008, approximately twenty-eight months after Vroman had begun employment for the DFD. (Docs. 158-61). Vroman then filed his motion seeking final

judgment and equitable relief in the form of reinstatement or, alternatively, front pay. (Doc. 167).

Vroman first requests that the Court grant front pay through the date of his retirement in the amount of $820,985.97. (Doc. 193 at 1). Because front pay is not intended to subsidize Vroman for the remainder of his working life and because an award through retirement would create a disincentive for him to advance in his career, the Court rejects this request.

As a alternative to extending front pay until retirement, Vroman requests that the Court grant front pay for a period of five years in the minimum amount of $128,738.39. (Id. at 1-2). Vroman argues that this five-year period is necessary for him to have "an opportunity to move to his 'rightful place'" as a lieutenant with the DFD, stating that it would be "extremely unlikely that [Vroman] would become a lieutenant before [March 19, 2013]." (Id.).

In order to determine the correct period of time to award front pay, the Court looks at what is required of Vroman for him to have the opportunity to become a lieutenant in the DFD. To advance from the beginning position of firefighter to lieutenant in the DFD, an employee must achieve two promotions—first from firefighter to engineer and then from engineer to lieutenant. (See Deltona Union Contract, Ex. 8 to Doc. 193, at 55). A promotion to engineer requires that a candidate meet certain minimum requirements.[2] Most notable

---

[2] All promotions in the DFD require that the applicant not be on any form of probation and have a minimum rating of "satisfactory" on their last performance evaluation. (See Deltona Union Contract, at 55).

is the requirement of two years of continuous service as a firefighter for the DFD. (Id.). However, the DFD does permit candidates who meet all the criteria except the two-year service requirement to test for the engineer's position after eighteen months, allowing an otherwise qualified applicant to make the promotional list before meeting the two-year requirement.[3] (Id. at 54). Permitting candidates to test for a promotion early allows an otherwise qualified candidate to avoid potential delays while awaiting the formation of the next promotional list. Vroman received this first promotion to engineer on August 29, 2008—approximately thirty-three months after beginning employment with DFD. (Vroman Aff., ¶ 23).

Eligibility for a promotion from engineer to lieutenant requires two years of continuous, full-time employment with the DFD as an engineer. But, the DFD does allow a similar eighteen-month exception for the otherwise fully-qualified applicant as noted previously. (See Deltona Union Contract, at 55). In addition to the continuous service requirement, applicants must also be state certified as a Fire Officer I, a Fire Officer II, and a paramedic. (Id.). Assuming that Vroman met all the criteria except the continuous service requirement, he would be eligible to take the lieutenant's exam in February 2010 at the earliest[4] and be

---

[3] Under the existing union contract with the DFD, an exam is given and applicants are ranked on a promotional list in accordance with their performance on the exam. (See Deltona Union Contract, at 53-54). This "promotional list will be maintained for a period of two (2) years from the date of the exam or until the list is exhausted, whichever first occurs." (Id. at 54).

[4] This assumes that Vroman tested for the position of engineer at the earliest possible opportunity. Given that he began employment with DFD in November 2005, Vroman would have been eligible to test for a promotion to engineer in May 2007—eighteen months later. However, he would not have been eligible for an actual promotion until November 2007;

eligible for promotion in August 2010.

Despite these requirements, Vroman has not attained certification as either a Fire Officer II or as a paramedic. (Vroman Aff., ¶¶ 29-30). Moreover, he has declared that not only does he not possess these necessary certifications, but he also does not intend to obtain his paramedic's certification.[5] (Id. ¶ 30). Without this certification, however, Vroman will never attain the rank of lieutenant with the DFD. Vroman then argues that the earliest he could enroll for certification as a paramedic would be Fall 2009 and that he "could not become a certified paramedic prior to Summer 2010." (Id. ¶¶ 30-31). However, this argument ignores the fact that Vroman could have started taking these classes at anytime after beginning employment with the DFD. Instead, he incorrectly assumed that he would be reinstated to the Volusia County Fire Department and chose not to take steps which would have given him the quickest opportunity to advance to lieutenant in the event that the Court denied reinstatement.

Vroman's own failure to take these necessary steps has contributed to delaying his opportunity for advancement within the DFD. Because of the uncertainty surrounding whether Vroman will ever receive the required certifications, especially in light of his own stated intentions not to obtain a paramedic's certification, the Court is reluctant to extend front pay past August 29, 2010—the date on which Vroman should have become eligible for

---

Vroman was promoted nine months later on August 28, 2008.

[5]In his affidavit to the Court, Vroman states that he does "not presently intend, nor have I ever intended, to become a State of Florida certified paramedic." (Vroman Aff., ¶¶ 29-30).

-6-

a promotion to lieutenant had he obtained the necessary certifications in a timely manner.[6] His request to extend front pay until March 2013 ignores his nearly three-year period of employment with the DFD prior to the jury's verdict, a time which he could have used to take the required certification courses. Accordingly, the Court will not extend front pay past August 29, 2010.

The issue, then, is what is the appropriate amount of front pay for the period between March 19, 2008 and August 29, 2010—approximately a twenty-nine month period. Vroman submits that his projected loss of income for this period totals approximately $63,000. (Ex. 15 to Doc. 193). The County, however, argues that Vroman incorrectly assumed in his calculations that he would receive all possible merit pay increases[7] and that he miscalculated the effect of technical team incentive pay on his hourly wages.[8] (Doc. 195 at 4). The County

---

[6] Vroman argues that the Court should not consider August 29, 2010 as the date for Vroman's eligibility to promotion to lieutenant because the DFD plans to generate the promotion list in early 2009—before Vroman would be eligible to sit for the exam—and that this list will be in existence until 2011. (Doc. 193 at 7). The only support that Vroman submits for this is his affidavit stating that "[i]t is [his] understanding that [DFD] is planning to administer the next promotional examinations . . . in either March or April 2009." (Vroman Aff., ¶ 37). The Court is not willing to extend front pay further based upon Vroman's speculation as to when the next promotional list will be generated, especially in light of the fact that no new promotional list has been generated since the last promotional list expired in late 2006, (id. ¶ 36).

[7] These merit pay increases require a positive performance evaluation. (Darby Aff., Ex. 3 to Doc. 195, ¶ 4(b)).

[8] The technical team incentive pay is awarded as a lump sum, bi-weekly bonus, not on an hourly basis as calculated by Vroman. (Darby Aff., ¶ 5). In her calculations regarding the technical team incentive pay, Suzanne Darby, the Support Services Manager for Volusia County Fire Services, does not credit Vroman for Technical Rescue Team Level C or Senior Fire Fighter/Lieutenant because she has not been provided with either a CPR Instructor certification or a State of Florida pump operator certification. (Id. ¶ 10).

submits that a more accurate projection of the loss of income for this period would be approximately $31,000. (Darby Aff., Ex. 3 to Doc. 195, & Ex. 1 thereto; Projected City of Deltona Frontpay Damages Calculations, Ex. 6 to Doc. 195). Because of the uncertainty surrounding any receipt of merit pay increases, the Court accepts the County's figure of $31,000.

Additionally, the County argues that Vroman failed to discount any award of front pay to its present value, failed to account for the probabilities of mortality or employment turnover, and failed to account for potential income tax liabilities. (Doc. 195 at 5). Due to the abbreviated period of front pay granted, the Court does not address the failures to discount for mortality or for the potential for employment turnover. Additionally, it would be improper for the Court to reduce the amount awarded to account for income taxes which Vroman will be required to pay. See Kendrick v. Jefferson County Bd. of Educ., 13 F.3d 1510, 1514 (11th Cir. 1994). However, the County is correct that any award should be reduced to its present value. As such, the Court awards Vroman front pay in the amount of $29,867.12.[9] Additionally, the Court awards Plaintiff $4000, the anticipated cost of acquiring certification as a paramedic. Finally, the Court denies Vroman's request for the cash value of sick leave available to him on the date of his termination, as this is properly classified as

---

[9] In calculating the present value, the Court used an annual interest rate of 1.52%—determining the annual interest rate from the post-judgment rate specified in 28 U.S.C. § 1961 in effect at the time of the jury's verdict. The Court discounted the County's projections of Vroman's lost income over a period of 894 days—the amount of time between the date the jury rendered its verdict and the date that this Court determined that front pay should end—to arrive at the present value of Vroman's projected lost income as of March 19, 2008.

back pay—an award already submitted to and determined by the jury.

### III. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion for Equitable Relief and Final Judgment (Doc. 167) is **GRANTED** to the extent it seeks final judgment and front pay. Pursuant to the jury's verdict, Plaintiff is awarded $5000 to compensate for net loss of wages and benefits to the date of trial and $5000 damages to compensate for emotional pain and suffering. Additionally, pursuant to this Order, Plaintiff is awarded $29,867.12 in front pay and $4000 for the cost of attaining his certification as a paramedic. Pre-judgment interest on the jury verdict amounts and front pay totals $557.83,[10] for a total award of $44,424.95.

2. The Motions for Entry of Final Judgment (Docs. 180-82) filed by Defendants Terry Moore, James Tauber, and James Willits are **GRANTED**.

3. The Clerk is directed to enter a judgment providing that Kurt Vroman shall take nothing from Defendants Terry Moore, James Tauber, and James Willits and shall recover the sum of $44,424.95 from Defendant Volusia County, Florida. This sum shall bear interest from the date of entry of judgment at the statutory rate. Thereafter, the Clerk shall close the file.

---

[10]In setting the appropriate pre-judgment interest rate, the Court has again used the post-judgment rate specified in 28 U.S.C. § 1961, the same rate previously used to calculate present value. Thus, interest has been accruing since March 19, 2008 at $1.66 per day, totaling $557.83 through February 17, 2009.

**DONE** and **ORDERED**, Orlando, Florida this 17th day of February, 2009.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record